UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

13-5227
(C.A. No. 12-1136)

SCOTT J. BRODIE,                                                                Appellant,
         v.

UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN SERVICE, et al.,                    Appellees.

**REPLY IN SUPPORT OF MOTION FOR SUMMARY AFFIRMANCE**

Contrary to Brodie's assertion in the first paragraph of his opposition, this appeal does not require consideration of any constitutional issue under *Brady v. Maryland,* 373 U.S. 83 (1963), but instead can be resolved based on the routine application of the doctrines of *res judicata* and collateral estoppel, the first two grounds on which the District Court granted summary judgment. While the District Court also correctly held that *Brady* does not apply to civil proceedings (the third alternative ground for the District Court's decision), the Court need not reach that issue to affirm the decision of the District Court.

As a threshold matter, Brodie's Opposition fails to respond to HHS's arguments for summary affirmance on the second of the three grounds on which the District Court relied, namely, that this second lawsuit by Brodie is barred by collateral estoppel because an essential underpinning of his *Brady* violation theory

(the materiality of data on his alleged laptop computer) already was decided against him in the debarment proceeding and in the first lawsuit. Having failed to respond to those arguments, Brodie has conceded that issue, entitling HHS to summary affirmance for this reason alone.

Brodie's Opposition also fails to identify any error by the District Court in granting summary judgment to HHS based on the final judgment in its favor in Brodie's first lawsuit because Brodie's attempt to re-litigate his debarment based on a new legal theory (an alleged *Brady* violation) is barred by *res judicata*. In any event, *Brady* obligations are inapplicable in civil proceedings.

## ARGUMENT

### I. Collateral Estoppel Bars Brodie From Re-Litigating The Materiality Of His Laptop To The Debarment Proceedings.

Brodie's Opposition acknowledges that, to prevail on the claimed *Brady* violation, the alleged laptop must contain "exculpatory evidence that reasonably could have altered the outcome of his debarment proceeding." (Opp. at 19.) The District Court correctly held that Brodie cannot meet this element of his claimed *Brady* violation because the Administrative Law Judge ("ALJ"), in response to a similar argument made by Brodie during his debarment proceeding, determined that the laptop was "irrelevant" and that, even if he assumed that Brodie did not create any of the false images at issue, "that possibility does not change the outcome of this case." (ECF No. 12-2 AR(2) 00008 and 00010-11.)

Because that decision was upheld in Brodie's first lawsuit and no further appeal was taken, the District Court correctly held that collateral estoppel barred Brodie's attempt in this lawsuit to re-litigate that issue under a *Brady* violation theory. (Mem. Op. at 14-16.) Brodie does not address the issue of collateral estoppel in his Opposition and has therefore conceded that issue. *See, e.g., Duma v. Fannie Mae,* 2011 U.S. App. LEXIS 9576, at *1-2 (D.C. Cir. May 6, 2011) (granting summary affirmance based on appellant's failure to address issue raised in appellee's motion). Thus, this Court should summarily affirm the District Court's grant of summary judgment to HHS on this basis alone.

## II. The District Court Correctly Found That Brodie's New Theory Is Barred By *Res Judicata*.

The District Court also correctly granted summary judgment to HHS on the basis of *res judicata* because Brodie could have, but failed, to raise his *Brady* violation theory in the prior proceedings. (Mem. Op. at 12-14.) This Court should summarily affirm the District Court's decision on this alternative basis.

Contrary to Brodie's assertion, this is not a situation where a litigant was unaware of potential exculpatory evidence at the time of the underlying litigation, in which case a *Brady* violation could be raised without a *res judicata* bar. (Opp. at 9.) Brodie does not fall into that category because: (1) Brodie was aware of the alleged exculpatory evidence, *i.e.*, his own laptop, during the debarment proceeding; (2) Brodie knew that the laptop had not been produced to him in that

3

proceeding;[1] (3) Brodie had in fact argued during the debarment proceeding that his defense was prejudiced by an alleged lack of access to "critical" evidence, including the alleged laptop, which the ALJ rejected as a "red herring," "untrue" and "irrelevant" (ECF No. 12-2, AR(2) 00010-11); and (4) Brodie had the opportunity in his prior lawsuit to litigate any aspect of the ALJ's decision.

Thus, as the record establishes, Brodie made arguments during the debarment proceeding based on his alleged lack of access to information that was known to him, including the alleged laptop. That he failed to couch those arguments in terms of a *Brady* violation in the debarment proceeding or otherwise raise them in his prior lawsuit does not give him the right to advance that new theory now. *Res judicata* "precludes the relitigation of *claims,* not just *arguments*, and having already litigated unsuccessfully claims under the Constitution and APA

---

[1] To the extent Brodie characterizes the issue as the agency's "failure to request" the laptop from the University of Washington as opposed to the agency's "failure to . . . produce" the laptop to him during the debarment proceeding (Opp. at 9), that is a distinction without a difference. The material point is that Brodie was aware of the contents of his own laptop, knew that the laptop had not been provided to him during the debarment proceeding, and had the ability to pursue that issue in that proceeding and his first lawsuit. HHS nevertheless observes that Brodie mischaracterizes the declaration of John Dahlberg (attached as Exhibit 2 to his opposition) when he asserts that the declaration states that the laptop was not "request[ed]" from the University. (Opp. at 7 n.3.) That declaration instead states that the University of Washington transmitted its investigation report and sixteen CD-Roms to ORI in December 2003 containing the computer files "relied upon by UW in its investigation that were copied from forensic copies of the computers UW sequestered during its investigation." (ECF No. 12-2, AR(2) 00145 ¶ 3.) The declaration states that none of the sequestered computers was identified by UW as a laptop computer, and that ORI does not possess the alleged laptop. (*Id.* ¶ 3, 6.)

in his first lawsuit based on an Administrative Record that addressed the same facts and circumstances at issue here, Brodie does not get a "second bite at that same apple." *Natural Resources Defense Council v. EPA*, 513 F.3d 257, 261 (D.C. Cir. 2008) (emphasis in original).[2]

Brodie also raises a new argument, not raised before the District Court, to try to explain his failure during the debarment proceeding to move to compel production of the laptop that he now maintains was so essential to his defense. Brodie's new argument, which is described below, is not a basis for this Court to deny the motion for summary affirmance. *United States v. Hylton*, 294 F.3d 130, 135 (D.C. Cir. 2002) ("an argument not made in the lower tribunal is deemed forfeited and will not be entertained absent exceptional circumstances").

Brodie argued in District Court that he did not litigate the "fact" that the Office of Research Integrity ("ORI")[3] "did not secure the laptop from UW" during the debarment proceeding because he was "led to believe", by ORI's "reticence",

---

[2] This Court also has applied *res judicata* when, as here, the two lawsuits involve the same underlying transaction, which in this case is Brodie's debarment proceeding. *Herion v. Children's Hosp.,* 2011 U.S. App. LEXIS 25840, at *4 (D.C. Cir. Dec. 23, 2011) ("two suits involve the same claim if they share the same 'factual nucleus' or arose out of the same 'transaction.' . . . Res judicata applies to all for recovery that could have been raised in the first action, whether or not they were actually raised.").

[3] ORI is the component within HHS that represented the agency in the debarment proceeding.

5

that the laptop was lost and not obtainable. (ECF No. 14-1 at 20.) Although claiming to be misled, Brodie did not identify any representation about his laptop that was made by ORI. To the contrary, he asserted that "during the 16-month course of the initial debarment proceedings, ORI did not identify, mention or produce his laptop computer." (*Id.* at 2.) From these facts, Brodie argued that he "was forced to conclude that ORI did not, in fact, have possession of the laptop, and that it was likely lost or destroyed." (*Id.*)

The District Court correctly held that this explanation for Brodie's inaction did not preclude the operation of *res judicata* because Brodie "could have" tested his assumption that "the laptop 'was likely lost or destroyed'" during the debarment proceeding, including through a motion to compel. (Mem. Op. at 13-14.) In other words, because Brodie "should and could have raised the argument then," he cannot have a second bite at the same apple now that his assumption about the laptop has changed. (*Id.*)

Brodie responds to this aspect of the District Court's ruling by changing his argument. He now contends, for the first time, that his inaction was not based solely on an assumption that he drew from the non-production of the laptop (as argued in District Court) but instead was the result of the absence of any written objections by HHS to Brodie's discovery request for the laptop, which Brodie contends was a prerequisite to his ability to file a motion to compel under the

6

applicable regulation. (Opp. at 4, citing 42 C.F.R. § 93.512(d)(1), which provides that "[w]ithin 30 days of receiving any objections, the party seeking production may file a motion to compel the production of the requested documents"). Thus, Brodie now explains his inaction as follows:

> No objection was made to the production of the laptop and as such, Dr. Brodie and his counsel had no basis to file a motion [to] compel under § 512(d)(1). Rather, they believed, based on the duties imposed on ORI to produce all research records and to fully respond to requests,[4] that the laptop was lost.

(Opp. at 5.) This new explanation for Brodie's inaction, raised for the first time on appeal, is not a basis for this Court to find error in the District Court's grant of summary judgment in favor of HHS on the issue of *res judicata*. *See, e.g., Zeigler v. Potter,* 2010 U.S. App. LEXIS 6904, at *1 (D.C. Cir. Apr. 1, 2010) ("declin[ing] to entertain appellant's assertion, raised for the first time on appeal, that he is disabled because of his inability to sleep" and granting summary affirmance).

## III. *Brady* Is Not Applicable To Civil Proceedings.

As Brodie acknowledges, the only relevant case in this Circuit as to the application of *Brady* to civil proceedings is *United States v. Project on*

---

[4] The regulations Brodie cites in support of these alleged "duties" also were not cited in Brodie's argument to the District Court on this issue. Moreover, to the extent these regulations were raised by Brodie at all during the briefing before the District Court, they were raised in Brodie's reply brief on a different issue. (ECF No. 20 at 2-3.). The District Court correctly held that Brodie had waived any arguments based on these regulations by raising them for the first time in a reply brief. (Mem. Op. at 17 n.6.)

7

*Government Oversight*, 839 F. Supp. 2d 330 (D.D.C. 2012) (referred to by Brodie as "*POGO*"). Rather than support Brodie's position, *POGO* concluded that, except in rare circumstances involving civil confinement or other equivalent restrictions on individual liberty, *Brady* is inapplicable to civil proceedings. *Id.* at 343 (observing that "[w]hat is at stake" in civil proceedings "is money and reputation, not 'whether someone will be locked away,'" and thus the consequences of a civil case are fundamentally different from criminal sanction). This distinction between civil and criminal proceedings is consistent with the manner in which the vast majority of other courts have addressed the issue, as Brodie acknowledges. (Opp. at 14-15.)

Brodie suggests that the result in *POGO* turned in part on the failure of the litigant in that action to have requested in discovery the information he claimed to be exculpatory and that the case is distinguishable on that basis. (Opp. at 15.) This argument not only mischaracterizes the basis for the holding in *POGO*, but also Brodie's efforts to obtain the information that he now claims to be exculpatory.

Even if the Court were to assume that Brodie made repeated requests for his laptop computer during discovery in the debarment proceeding,[5] Brodie concedes that he did not take any steps after receiving the agency's response to his discovery

---

[5] As addressed in HHS's filings in District Court, the Administrative Record in fact does not support that assertion. (ECF No. 18 at 7-8.) Brodie only made one formal discovery request that mentioned a portable computer, and it did so only in a general fashion. (*Id.* at 8.)

8

request (which he contends did not include production of, or reference to, the laptop) to move to compel the laptop's production. If his allegations are to be credited, and he believed the laptop contained crucial, exculpatory evidence, due diligence would dictate that he would seek to compel its production or otherwise pursue the issue during the debarment proceeding or in his first lawsuit. However, as he concedes, he did not do so. Brodie, therefore, is no different than the litigant in *POGO* in that he too failed to exercise due diligence. Thus, the fact that Brodie claims to have sought the laptop in discovery ultimately does not advance his position given his failure to further pursue that issue.

Finally, in attempting to equate debarment to a criminal sanction, Brodie overstates the holdings in a series of cases including *Trifax Corp., v. District of Columbia*, 314 F.3d 641 (D.C. Cir. 2003), *Fischer v. Resolution Trust Corp.*, 59 F.3d 1344 (D.C. Cir. 1995), and *Old Dominion Dairy Products v. Secretary of Defense*, 631 F.2d 953 (D.C. Cir. 1980). These cases merely recognize that individuals who face the possibility of debarment in an administrative proceeding must be afforded basic due process – such as being provided notice of the charges and an opportunity to respond – before being denied the privilege of doing business with the government. *E.g.,Trifax*, 314 F.3d at 643. While these cases recognize that some liberty interest is implicated by a debarment (*i.e.*, the impact on one's right to pursue his or her chosen career), these cases do not equate that

interest with the far more significant liberty interest (*i.e.*, personal freedom) at issue in criminal proceedings. Thus, Brodie's entitlement to procedural due process during his debarment proceedings (which was fully provided to him as the District Court found in his first lawsuit) does not mean that Brodie also was entitled to the added protections reserved for criminal defendants under *Brady*.[6]

## CONCLUSION

For the foregoing reasons, and those set forth in the motion for summary affirmance, HHS respectfully requests that the Court summarily affirm the judgment of the District Court, granting summary judgment to HHS and denying Brodie's cross-motion for summary judgment.

                                          Respectfully submitted,

                                          RONALD C. MACHEN JR.
                                          United States Attorney

                                          R. CRAIG LAWRENCE
                                          Assistant United States Attorney

                                            /s/ *Jeremy S. Simon*
                                          JEREMY S. SIMON
                                          Assistant United States Attorney

---

[6] Brodie also cites to a decision by the HHS Departmental Appeals Board in support of his position. (Opp. at 16.) The relevant authority from that Board, however, is *Cary Frounfelter and Kast Orthotics, Inc., v. Inspector General*, 2008 WL 5352871 (H.H.S. Departmental Appeals Bd. Dec. 8, 2008), where the Board determined that *Brady* does not apply to matters before administrative tribunals, even those matters that have "serious adverse consequences." *Id.* at HHS 35.

# **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 24th day of October, 2013, the foregoing Reply in Support of Motion for Summary Affirmance has been served through the Court's electronic filing system on:

John Hardin Young
Sandler, Reiff, Young & Lamb, P.C.
1025 Vermont Ave. N.W. Suite 300
Washington, D.C. 20005

                              */s/ Jeremy S. Simon*
                              JEREMY S. SIMON
                              Assistant United States Attorney
                              Judiciary Center Building
                              555 Fourth Street, N.W.
                              Washington, D.C. 20530
                              (202) 252-2528